UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TRIS ANNE KOWALCZYK,<br>　　Plaintiff,<br><br>　　　　v.<br><br>ANDREW M. SAUL,<br>Commissioner of the Social Security<br>Administration,<br>　　Defendant. | CAUSE NO.: 2:18-CV-431-JEM |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Tris Anne Kowalcyk, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 19], filed March 1, 2019. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On June 10, 2019, the Commissioner filed a response, and on June 24, 2019, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**I.    Background**

On March 14, 2015, Plaintiff filed an application for benefits alleging disability beginning July 13, 2012. Plaintiff's application was denied initially and upon reconsideration. On August 2, 2017, Administrative Law Judge ("ALJ") Edward Kristof held a video hearing at which Plaintiff, with counsel, and a vocational expert ("VE") testified. On November 1, 2017, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.　　The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

1

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of July 13, 2012 through her date last insured of December 13, 2016.

3. Through the date last insured, the claimant had the following severe impairments: systemic lupus erythematosus (SPE), fibromyalgia, osteoarthritis, obesity, chrondomalacia, status post lateral release of the right knee, degenerative disc disease status post cervical spine fusion, neuropathy, carpal tunnel syndrome, migraines, restless leg syndrome, vertigo, depression, anxiety, and posttraumatic stress disorder.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. Through the date last insured, the claimant had the residual functional capacity ("RFC") to perform a limited range of sedentary work as defined in 20 CFR 404.1567(a) with: lifting, carrying, pushing, and pulling a maximum of 10 pounds with occasional lifting of lesser weights such as small tools or file folders, standing and walking no more than two hours in an eight-hour day, and sitting six hours in an eight-hour day. She could never climb ladders, ropes, or scaffolds, crawl, or kneel. She could occasionally perform other postural maneuvers. She could perform frequent, but not constant, handling, fingering, and feeling with her bilateral upper extremities. There should have been no more than a moderately noisy work environment. There should have been no concentrated exposure to workplace hazards such as unprotected heights or dangerous moving machinery. There should have been no operation of a motorized vehicle as part of work duties. She was able to understand, remember, and carry out instructions to perform simple tasks. She required work that was routine and repetitive in nature, performing essentially the same tasks in the same place every day. She could not perform any fast-paced or piece-rate work, but required end-of-day goals only. She could have no more than occasional and superficial interaction with the public, nothing more involved than answering a discrete question such as the location of an item in a store, and there should have been no tandem work.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was 42 years old, which is defined as a younger individual age 18-44, on the date last insured.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment

for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review*." Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

4

**III. Analysis**

Plaintiff argues that the ALJ failed to properly analyze the opinions of Plaintiff's treating physicians, failed to build a logical bridge to the conclusions in the RFC, and failed to properly assess Plaintiff's subjective symptoms. The Commissioner argues that the decision is supported by substantial evidence.

The ALJ granted "some weight" to the opinion of Plaintiff's treating neurologist, Dr. Shaila Gupta, and "little weight" to her treating psychiatrist, Dr. Dewnzar Howard. "[A] judge should give controlling weight to the treating physician's opinion as long as it is supported by medical findings and consistent with substantial evidence in the record." *Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2); *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018)); *see also Gudgel*, 345 F.3d at 470; *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). If the ALJ declines to give a treating source's opinion controlling weight, he must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6). "[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

Dr. Gupta partially completed a Headache Residual Functional Capacity Questionnaire,

leaving several of the questions blank. In summary, Dr. Gupta opined that Plaintiff had migraine headaches triggered or made worse by lack of sleep, stress, excessive movement, bright lights, noise, and odors. AR 687-88. The doctor did not discuss the frequency or duration of the headaches, other than that Plaintiff used medication "for rescue a few times a month," and had "good days and bad days." AR 688. The ALJ granted Dr. Gupta only some weight because the form was incomplete and did not address Plaintiff's ability to work, because Plaintiff "did not require emergency room treatment," and because her headaches appeared to be improved with medication.

The ALJ's reasons were not adequate grounds to reject a treating doctor's opinions. Although Dr. Gupta did not opine on every topic in the Residual Functional Capacity Questionnaire, that is not a "sound reason" to reject the opinions she did give. If the opinions provided were insufficient, it was the ALJ's job to fortify the record. *Barnett*, 381 F.3d at 669 (the "ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable"); *see also Gudgel*, 345 F.3d at 470 (finding error where "the ALJ did not explain how the evidence in the record contradicts [the examining physician]'s diagnosis"). It is unclear why the ALJ concluded that Plaintiff's improvement with medication contradicted Dr. Gupta's opinion about what triggers the headaches; Dr. Gupta herself acknowledged that the "medications help." AR 688.

Similarly, the ALJ provided no reason why Plaintiff not going to the emergency room was a reason to limit the weight given to Dr. Gupta. Presumably, the ALJ thought this was evidence that Plaintiff's symptoms were not as severe as Dr. Gupta said they were. But no evidence identified by the ALJ indicates that emergency room treatment would be appropriate treatment for migraines, which Plaintiff normally treated with medication and by lying down in a dark room for a few hours. *See Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (the "ALJ must first explore the claimant's

reasons for the lack of medical care before drawing a negative inference."). In assuming that the emergency room was the place to treat chronic headaches, the ALJ appeared to substitute his own judgment for that of medical professionals, in violation of the Seventh Circuit Court of Appeals' repeated warning that ALJs are not to make their own independent medical findings and should not "succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (citing cases); *see also, e.g., Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion"); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

The ALJ gave little weight to Plaintiff's treating psychiatrist, Dr. Dewnzar Howard. Dr. Howard opined, in summary, that Plaintiff has depression and anxiety, has poor concentration and memory, has difficulty "getting up and getting organized," and would struggle to hold a job. AR 310. Although the ALJ noted that Plaintiff was recorded with normal affect, concentration, mood, or memory at various points in time, those citations concerned only some of the topics Dr. Howard addressed. For example, the records cited by the ALJ do not contradict the doctor's opinion that Plaintiff's symptoms "wax and wane" and could cause unscheduled absences, or that she is isolated and avoids social situations. Moreover, although the ALJ stated that Dr. Howard "has had an ongoing personal relationship" with Plaintiff, he did not assess Dr. Howard's opinion with reference to the required factors, including the length, nature, and extent of the treatment relationship and the frequency of examination. *See* 20 C.F.R. § 404.1527(c); *see also Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) ("[S]everal of the factors support the conclusion that Dr. Powell's opinion should be given great weight . . . Proper consideration of these factors may have caused the ALJ to

7

accord greater weight to Dr. Powell's opinion."); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (remanding where "the ALJ said nothing regarding this required checklist of factors"). On remand, the ALJ must assess the opinions of Plaintiff's treating providers in the manner required by these regulations, and may reject them only if he has a "sound reason" for doing so. *Punzio*, 630 F.3d at 710 (7th Cir. 2011).

Next, Plaintiff argues that the restrictions in the RFC were not sufficiently supported by the record. The ALJ found that Plaintiff could perform sedentary work with simple, routine, and repetitive tasks with occasional and superficial interaction with the public, "doing no more than answering discrete questions such as the location of an item in a store," but found that she could meet "required end of day goals," among other limits.

The ALJ did not adequately explain how he arrived at those limits. The RFC must include a narrative discussion "describing how the evidence supports each conclusion." SSR 96–8p at *7. Although the ALJ indicated that the "totality of the evidence" and "the record as a whole" demanded greater restrictions than state agency doctors prescribed, he did not show how he concluded, for example, that Plaintiff could sustain "end of day goals" but not piece-rate work. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (remanding where "the ALJ did not explain how he arrived at [his] conclusions; this omission in itself is sufficient to warrant reversal of the ALJ's decision"). Moreover, while the ALJ included limitations on exposure to light and noise, apparently to address Plaintiff's migraines, none of the limitations addressed her apparent need to lie down for at least two hours when she got a migraine. *See* AR 53 ("A bad migraine will definitely put me out of commission for at least two hours even with the medication . . . [I get] out-of-commission migraines at least three times a month."). If the ALJ concluded that limitations on light

and noise would eliminate the need for breaks, he failed to draw the required logical bridge from the evidence to that conclusion. *O'Connor-Spinner*, 627 F.3d at 618. Given the VE's testimony that more than ten missed workdays per year would preclude employment, AR 70, the ALJ effectively ignored an "entire line[] of contrary evidence" calling into question Plaintiff's ability to hold a job. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); *see also Villano*, 556 F.3d at 563 (holding that an ALJ "must evaluate all limitations that arise from medically determinable impairments . . . and may not dismiss a line of evidence contrary to the ruling").

The ALJ's analysis of Plaintiff's obesity was also lacking. An ALJ must consider the exacerbating effects of a claimant's obesity on her other conditions when arriving at the RFC assessment. *Clifford*, 227 F.3d at 873 (remanding where the ALJ "should have considered the weight issue with the aggregate effect of [claimant's] other impairments"); *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("[A]n ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation."); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."). In this case, while the ALJ stated at step two that he considered obesity in combination with other impairments for purposes of determining whether her obesity met or medically equaled a listing, there was no such analysis for the RFC. The ALJ found that Plaintiff was morbidly obese, that the obesity was a severe impairment, and he limited her to sedentary work with additional restrictions, but his explanation of the RFC contains no discussion of obesity specifically. Plaintiff was found to have several severe impairments, such as fibromyalgia, osteoarthritis, and degenerative disc disease, that could have been exacerbated by obesity. On remand, the ALJ must consider the combination of

Plaintiff's impairments, and specifically address the impact her obesity had on her other impairments.

Plaintiff also takes issue with the ALJ's analysis of her subjective complaints. When assessing subjective symptoms, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. § 404.1529(a); SSR 16-3p, 2017 WL 5180304. The ALJ is not permitted to

> make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." . . . The decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the ALJ evaluated the individual's symptoms.

SSR 16-3p, 2017 WL 5180304 at *9. Although the ALJ cited SSR 16-3p in his analysis, he addressed Plaintiff's complaints with a general finding that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence in the record for the reasons explained in this decision." To the extent the ALJ analyzed Plaintiff's individual complaints, he did so only with reference to objective evidence. Objective evidence cannot be the sole basis to judge inherently subjective symptoms, such as pain. "[T]he absence of objective medical corroboration for a complainant's subjective accounts of pain does not permit an ALJ to disregard those accounts." *Ghiselli v. Colvin*, 837 F.3d 771, 777 (7th Cir. 2016); *see also Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014) ("[T]he ALJ erred in rejecting [the plaintiff]'s testimony on the basis that it cannot be objectively verified with any reasonable degree of certainty. An ALJ must consider subjective complaints of pain if a claimant has established a medically determined impairment that could reasonably be expected to produce the pain."). This is

10

particularly important given that Plaintiff suffered from several conditions with symptoms that cannot always be confirmed objectively, such as fibromyalgia. *See Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018) ("We are troubled by the ALJ's purported use of objective medical evidence to discredit [the claimant's] complaints of disabling pain because fibromyalgia cannot be evaluated or ruled out by using objective tests."); *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017) ("fibromyalgia . . . cannot be measured with objective tests aside from a trigger-point assessment") (collecting cases and medical authority). On remand, the ALJ must consider Plaintiff's daily activities, medication use, and any other ways she tried to relieve her pain, as the regulations require when considering subjective complaints. *See* SSR 16-3p, 2017 WL 5180304 at *7-8 (listing the factors to consider).

Plaintiff requests reversal with remand for an award of benefits. An award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability. *Briscoe*, 425 F.3d at 356. In this case, two state agency physicians opined that Plaintiff could work, while Plaintiff's treating psychiatrist claimed that she could not. The ALJ failed to properly analyze a number of alleged symptoms that seemed to suggest Plaintiff could not work. The relevant factual issues are not resolved, so an award of benefits is not appropriate at this stage. *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993) (remand for benefits is inappropriate "unless the record can yield but one supportable conclusion").

On remand, the ALJ must analyze the opinions of Plaintiff's treating doctors as described in 20 C.F.R. § 404.1527(c), and should give controlling weight to these opinion if they are supported by medical findings and consistent with substantial evidence in the record. *Kaminski*, 894 F.3d at 874. The ALJ must build a logical bridge between the evidence in the record and the ultimate

conclusion. *See Myles*, 582 F.3d at 678 (7th Cir. 2009) ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusion."). The ALJ must also analyze Plaintiff's subjective symptoms as defined by SSR 16-3p, including her complaints of pain and the measures taken to relieve that pain. *See* 20 C.F.R. § 404.1529(a); SSR 16-3p, 2017 WL 5180304. Finally, the ALJ is reminded that, if he or she finds that Plaintiff has difficulties in maintaining concentration, persistence, and pace, those limitations must be accounted for in the hypothetical to the vocational expert, as well as in the RFC. *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015) ("[A] hypothetical posed to a VE must incorporate all of the claimant's limitations supported by the medical record—including moderate limitation in concentration, persistence, and pace.") (citing *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)).

**IV.     Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 19] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 20th day of February, 2020.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:     All counsel of record